Good morning Your Honors. My name is Lori Tyker and I'm appearing on behalf of Appellant Mr. Ricky Webb. I'll attempt to reserve three minutes for rebuttal. The question before this Court is whether or not the U.S. District Court erred in denying Mr. Webb's habeas petition with respect to the claim that his attorney rendered ineffective assistance of counseling at sentencing by failing to do anything at sentencing. I guess the rhetorical question here is what does Mr. Webb have to do? You have a state trial court on state post-conviction that's completely aware of the Strickland standard and that it says and applies an objective standard, a reasonable probability that had somebody told me about this I would have done something different. The state district court judge, an experienced judge, sentenced Webb based upon what he heard about for the first time on state post-conviction to be a false misrepresentation of the evidence as it actually played out. When the judge found that out, he would have changed the sentence after he had a full-blown hearing and granted a new sentencing and he indicated that he would have given Mr. Webb not only less time but more concurrent time. He basically maxed him out. And you can understand, Judge Collins being a trial court judge yourself when you're not sitting here, why this judge was a little bit angry at two different points during the proceedings. First of all, at sentencing. At sentencing, the facts that were mitigated and supported that. You have a sentencing judge who hears what's been presented by the prosecutor and has been represented in the pre-sentence report prior to sentencing saying that Mr. Webb entered this hotel room, he went in three different times, and each time he came out he had all this stuff and every I was wondering why there was three counts of burglary here when it was entry into one room. Now I understand, and Mr. Webb, I'm going to max you because you went into that room and you took all this stuff and you took it time and time and time again. Well, Mr. Webb's attorney, as opposed to getting up there and saying, no, no, I watched the video. Mr. Webb watched the video. Everybody's looked at this video. He went into the room, but the first two times he didn't take anything. All this happened in a space of less than an hour. The entries were less than a minute for the first two times, less than two minutes for the third and final time. And on the third time, that's the only time any property was taken. Weren't there people in the room at the time he entered? There was. There was a man sleeping in the room. And on the third time that Mr. Webb entered the room, contrary to what the state argued and presented, was that he had to do it three times because he was taking so much stuff out. The fact was he entered the room and what he took out was a wallet and a leather jacket. But under Nevada law, when he entered the room each time, whether he took anything or not, wasn't that still a burglary? That is what's at issue here. And that's where counsel was not reasonable in arguing Nevada case law regarding that because you have to have the intent. And what the trial court judge said here is under state law, Bedard versus state, he had an argument that there was one intent. The one intent was to enter and to take that property. And at least it should have been made as, he should have argued that factually and that it was different from Bedard and that Bedard was entry into an office suite situation where there was numerous entries into locked, different locked offices. And each one of those, the Nevada Supreme Court said, yes, those are different burglaries. I'm sorry? Do you really think that would have gotten him any place? Absolutely. And what we have here is we have the trial court judge that says, it would have gotten me somewhere. It would have gotten Mr. Webb a lesser sentence and some concurrent time versus all consecutive. This is the same judge that heard both arguments. Yes, it is. He did the sentencing. Yes. He heard how bad it was. And then he did the post-conviction. The post-conviction. And he heard how inept the trial attorney was. Exactly. Exactly. And that's the way post-conviction works in Nevada. When a petitioner, a state prisoner, files a state post-conviction petition, it goes back in front of the sentencing judge. So you have a unique situation here where you have the sentencing judge who has a day-long hearing that the Nevada Supreme Court completely ignores, by the way. But you have a day-long hearing where he hears witnesses. He hears testimony. He hears the lawyer. The lawyer is up there at least two times. It comes back maybe a third after some other witnesses. Hears Mr. Webb. Hears all of this evidence regarding the failure to raise the multiplicity in terms of the offenses, as well as the judge gets mad again. And the judge gets mad because he's like, wait a minute. Why am I hearing about any of this on post-conviction? Why didn't this lawyer and the judge evaluate the credibility of Mr. Webb and his attorney and said, this lawyer under Strickland, applies Strickland, goes through all of the things concurrent, and I would have given him a lesser sentence instead of maxing him out. And that's what he did. Why does the Nevada Supreme Court say he was wrong? The Nevada Supreme Court says he's wrong because what they do is they focus, well, first of all, they completely disregard the failure to present any mitigating evidence. They don't even address that in their order. And what they look at is they look at strictly the sentencing transparency. They look at the sentencing transcript, and if you read the order, that's all they talk about is a sentencing transcript where you've got the judge, where you've got Mr. Webb's counsel who basically, the summary of his argument regarding these entries, which is a really big point for the judge in terms of, you know, why are there three counts of burglary? What am I going to do with them? All he says is, Your Honor, it's one episode. I'd ask that you run it concurrent. He doesn't do anything to say the false statements that have been presented by the DA and in the PSI about supposedly all the stuff that he's carrying out, and that's why he has to go in three times. Okay. If you want to reserve your time, you may. Wow. Yes. Thank you. Good job. May I please the court? My name is Troy Jordan, Deputy Attorney General for the State of Nevada on behalf of the respondents in this matter. I first want to address the issue raised by the court as to why the Nevada Supreme Court said that the district court was wrong. What they said was, and I'm going to agree to disagree with Ms. Tyker about what they look at on post-conviction appeal. What they look at is the entire record. They look at the sentencing transcript. They look at the evidentiary hearing transcript. They look at the arguments and briefs from counsel, and what they determined was, and it's seen at excerpts of record at 27, is that the district court made a finding that counsel failed to raise this issue at all. In fact, the quote is, they failed to raise any arguments or evidence in mitigation regarding multiplicity. What the Nevada Supreme Court found when they looked at the sentencing transcript was it's just flat out is an inaccurate and wrong finding. At excerpts of records 122 and 123, counsel specifically raised the multiplicity issue by arguing that this crime was one transaction, one crime. And that is the verbiage used in every Nevada case regarding multiplicity, is one transaction. With respect to that, it's just flat belied by the record. With regard to... So how do you explain the fact that the trial court had a different view of everything? I mean, he listened to the trial, he conducted the sentencing, and he expressly said that he would have sentenced differently if this information had been presented to him. How do you explain that? Well, I think that where the issue comes up is which prong of strickland we're talking about. And clearly, we're not going to be able to rebut that the sentence would have been different. The judge said that. The sentencing judge is the same as the post-conviction judge. But that only goes to prejudice. The finding of deficiency has to be supported by fact. And that's where he was wrong. Whether he missed it in the transcript, whether he just didn't remember it, whether he didn't read the transcript, we're not aware of. But the fact of the matter is, it's contradicted by the record at excerpts of record 122 and 123. Counsel specifically brought it up in successive paragraphs and did it twice right then. Now, as far as the prejudice prong goes, yes, the judge said I would have found differently, but when that ñ but you have to have both prongs. And the first prong in this case is not met because it's contradicted by the record. But what you're saying is that he did raise it. What I'm saying is he did raise it, and the record supports that. And that's why this Nevada Supreme Court found that the determination that counsel's performance was deficient in that area was not supported by the record. There wasn't a day-long evidentiary hearing. I gather that the sentencing proceeding was fairly brief. The sentencing proceeding, I would say, lasted about between 10 and 15 minutes, depending on the day at the Washoe District Court in Reno, Nevada. It would have been part of the law in motion calendar. It would have come up literally, almost cattle call-ish in nature, where the defendants come in, the lawyers come in, arraignments done, sentencings are done, and everybody leaves. And that's why the judge didn't get it. I think that's why the judge didn't get it. I think that it was in a hurry. I think that at the time that there was a very busy calendar, I think the judge may have just missed it in his ruling. Mr. Ware was certainly present. I would say that Mr. – I take issue with that in the sense of this. First of all, petitioner's claim that he was maxed out is actually not true. And what you mean by maxed out is he got the maximum sentence. Under NRS Nevada revised statutes, 205.060, the maximum potential sentence for a burglary is four years to 10 years. That's 48 months to 120 months. He was given 40 months to 120 months and, therefore, did not get two years' worth of time that he was eligible for under the statute. Secondly, you've got to look at the situation that counsel was placed in with that deal. Under Nevada revised statutes 207.010, the habitual criminal statute, which Mr. Webb was eligible for at the time, and if you'll look at excerpts of the record at 83, counsel had negotiated away. He was up for the possibility of a life sentence and including life without the possibility of parole. They negotiated this away. He got it reduced from a possible life sentence to 30 years, and that's 30 years to argue for anything down to probation. But he got three consecutive sentences of 120 months with a minimum parole of 40 on each. That's correct. So that's three times four. That's 10 years before he's eligible for parole. That's correct. And the issue there relates to his criminal history. If you look at the excerpts of record at 142 where the judge is talking about this case, he specifically says, Mr. Webb, you're in a different scenario because of your prior conduct. This person had nine prior felony convictions. He's pleading two felonies, 10, 11, and 12 on this day. The maximum sentence was totally appropriate based solely on his criminal history. So why did the trial judge change his mind when he heard about it later on? That's a question that, Your Honor, I don't have a good answer for. He had the same ñ he now had 12 convictions by the time he saw him the second time. He did. And he said, I would have given him less time had I known this. I agree. He did say that. And with regard to that, we still stand by that the Nevada Supreme Court's decision was not based on the prejudice prong but on the deficient performance prong. Well, is there an argument that there was deficient performance and not calling it to the judge's attention during this sentencing proceeding, the truncated? Well, the issue before the court is whether he failed to raise it in total. Yeah. He clearly did raise it. There's no question before the court as to how well or how effectively he did. The issue is whether he failed to or did not fail to raise it. And he clearly raised it, which clearly makes the State District Court's decision contrary to the facts. And therefore, a petitioner cannot prove deficient performance and therefore cannot prove counsel was ineffective. If the judge doesn't get it, how can you argue that he raised it? I mean, the idea of raising it so the court gets it, isn't it? Well, I believe the idea of raising it is to raise it. And he clearly raised it. But whether the judge doesn't get it or not, I think is in the mind of the judge. I'm not sure whether we can try all those issues. And I agree with you, Your Honor, that you can't try the issue of what the judge misses when it's right there for him in black and white in the excerpts of the record. Well, I take it when this was raised in collateral review, this was the only issue? No. There were several issues? So what was the hearing about? The evidentiary hearing in Nevada, the way it works is they file a post-conviction petition. And if there's arguable facts, so to speak, they get an evidentiary hearing on all issues that are not repudiated by the record. And with that, there were issues in this evidentiary hearing about whether he'd asked for a direct appeal. There was issues as to ground two that is raised here today that we haven't talked about yet. There were issues regarding this multiplicity issue. Counsel testified. The defendant testified. And, in fact, they brought in, I believe, three other witnesses. His appellate attorney. None of that's an issue here, mind you. And then his mother and his grandmother. And that is my segue into ground two. Counsel flat testified as far as painting him in a bad light that it was strategy. And I would assert to you, based on the previous discussion, that that was sound strategy. He can't call a person with nine priors who's pleading to felonies 10, 11, and 12 as a model citizen or someone who hasn't reoffended. This is part of a strategy to show he's accepting responsibility. This is part of a strategy to show he's accepting responsibility. In fact, the defendant was even on board with this. If you look at his statement before the court, which is a voluntary statement that he doesn't have to make, he actually admits at page 139 of the excerpts of record, he says, I sell drugs. That's all I know. I did this crime. Later on, he goes on to say, I want to own up to it. This was the strategy they employed. And if you look at the testimony at the evidentiary hearing, which is in and around, starts, the evidentiary hearing starts at least, Mr. Melezo's testimony starts around 241 of the excerpts of record. When you get to the testimony of his mother and his grandmother, what they say is, well, he's a good person. He had a rough childhood. That's contrary to taking your responsibility and saying, yeah, I know I screwed up, and I know I've got a criminal history, but I'm asking for leniency. It's completely contrary to what counsel tried to do that day, which was to say, look, Judge, we know you've seen him before. We know he's been here with nine priors. We're just asking for leniency because he's finally going to take responsibility for this. For them to get up and try to paint it as somebody else's fault is contrary to that strategy. And respondents assert that this counsel had a sound strategy in what he was doing because he's faced with a situation, and I want to make a couple of things clear. May I ask you, was there an argument before the Nevada Supreme Court, or did the court review just the briefs? They just reviewed the briefs, Your Honor. And with respect to Mr. Webb's counsel, he got surprised twice that day, because if you look at excerpts of the record at 114, the defendant agreed in the plea agreement that he was going to represent that he had seven felony convictions. The prosecutor in the parole and probation department came up with two more that day. Then they had an officer from the repeat offender unit that came in and testified that the defendant had been under surveillance for months and that he was unanimously put on that watch list. These are things that go to the fact that counsel cannot bring up this model citizen argument or that you can blame it on something other than his own actions. And with that, Your Honor, I'm out of time. You're out of time. Thank you. Briefly, Your Honor, that's all the time that I have. To respond to the Attorney General's argument, what we have at issue here is Strickland, and the first prong of Strickland is whether or not counsel's performance fell below an objective standard or reasonableness. The Attorney General suggests that the simple fact that counsel got up and said, it's one entry, I'm asking for concurrent time, that's enough. That's not enough under an objective standard of Strickland. What you have to have here is you have to have a situation where counsel makes a tactical decision, but that tactical decision has to be reasonable. I think an important thing to note here is that at the arraignment, counsel asked for between 45 minutes and an hour at sentencing. He asked for that time to be set aside. When he actually got to sentencing, it's not even close to what happened. He testified that he went through the PSI in court in this cattle call right before court. Mr. Webb said, yeah, I got some problems with my priors. Okay, I'm making note of that. He didn't do anything in terms of preparing any kind of a mitigation case. Mr. Webb's mother was there. The tactic has to be reasonable. It can't be from inattention under case law, under Wiggins and Williams v. Taylor. It can't be ---- I'm not understanding what the tactic is that you're referring to. The tactic that he ---- the tactic that it's enough for counsel here to say, I'm asking for concurrent time and my client's a thief and not presenting any mitigation. When he had that in front of him and he just didn't even choose to go anywhere with it. Multiplicity alone isn't what we have here in terms of the attorney general saying that it's enough that he just raised it. It's not enough if he just raised it when you've got the state saying facts that are completely wrong. And that's what the state trial judge was angry about. He said, wait a minute, I've sentenced him based upon what these facts and what I'm finding out here is these facts aren't even close to right. And there is all of this stuff that Mr. Webb presented to him that could have been presented to him and that the state trial court judge looked at and said, you know what, if I would have had this, if I would have had this, I would have given him concurrent time. I would not have gone way above what parole and probation recommended. He was very close to maxing him out, okay. The 40 versus 48 months on the low end, but you do have a 30 year on the high end here, which is the maximum under Nevada law for burglary. Keep in mind that parole and probation recommended 4 to 18 years, significantly lower than what he had. You have used your time. Thank you. The court appreciates the arguments presented. The case just argued is submitted.
judges: Collins, Schroeder, Rawlinson